

## JUDGE PRESKA

08 CV 6673

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x

Guy Morris, and 56 Walker, LLC

                          Plaintiffs,

        -against-

David Lee, VCD Construction, Inc.,
Michael Hall Lombardi and Lombardi
Consulting

                       Defendants.

---------------------------------------------------x

**CIVIL ACTION No. _____**

RECEIVED
JUL 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

### COMPLAINT AND JURY DEMAND ON ALL COUNTS
(Plaintiffs incorporate by reference the attached exhibits
with the same force and effect as if herein set forth)

      The Plaintiffs, by and through their attorneys, Dickerson, Tomaselli and

Mullen, LLP, allege, upon information and belief, as follows:

### PRELIMINARY STATEMENT

    1.    This action arises out of a pattern of illegal activities, including fraud, deceit,

conspiracy, gross negligence, professional malpractice and negligent misrepresentation

by Defendants, a group of entities and individuals, some acting under color of state

granted permits and licenses, taken against Plaintiffs to deprive them of profits,

compensation and   property through using a well orchestrated, covert plan and

campaign of deceit, as well as the manipulation, misuse and abuse of permits and

grants of authority by the City and State of New York.

1

1. The causes of action brought are (1)  fraud by commission, omission and nondisclosure, (2) common law conspiracy, (3) breach of contract, (4) negligence, (5) fraud in the inducement, (6) constructive fraud, (7) misrepresentation, (8) unfair business practices, (9) professional malpractice, (10) conversion, (11),  deceit  and (12) infliction of emotional distress.

2. This is a civil action seeking injunctive relief, monetary relief, including past and on going economic loss, compensatory, and punitive damages, disbursements, costs and fees for violations of rights, brought pursuant to common law and related state law claims.

3. The Plaintiffs allege that the Defendants wantonly, recklessly, knowingly, purposefully, and with malice aforethought, acting individually and in conspiracy with each other, sought to deprive Plaintiffs and did so deprive them, of compensation, profits and property, through a continuing pattern of violation of individual legal rights, retaliation, misrepresentation, misinformation, fraud, harassment, abuse and manipulation of laws, rules and regulations, conversion, misappropriation and fraud.

**JURISDICTION**

4. Jurisdiction of this court arises under 28 U.S.C. § 1332 (a) (2)

5. Jurisdiction of this court for the state-law claims is authorized by Fed.R.Civ.P. 18(a) (Joinder of Claims and Remedies).

6.Venue is proper in this District under 28 U.S.C. §§ 1391 (a) because a substantial part of the events or omissions giving rise to the causes of action occurred in this District, and the real property that is the subject of the action is situated in this District, and the corporate and other entities that orchestrated and participated in the conspiracy complained of are subject to personal jurisdiction in this District.

**PARTIES**

7.Plaintiff  Guy Morris (G. Morris)  is a natural person of the full age of majority, residing in the State of Colorado at all times relevant to this Complaint.

8.Plaintiff 56 Walker LLC. (56W LLC) Is a limited liability company organized in New York State.  G Morris, a citizen of Colorado, is the sole equity interest holder in 56W LLC.

9.Defendant David Lee (Lee) is a natural person of the full age of majority, residing in the State of New York at all times relevant to this Complaint, and who holds himself out to be a contractor fully qualified to do business within the State of New York, and possessing all necessary government permits and authorizations and maintaining requisite insurance policies and bonds.

10.Defendant VCD Construction, Inc. (VCD) is a corporation properly and currently organized, and incorporated in the State of New York on March 8, 2001, and which represents that it is fully qualified to do business within the State of New York as a general contractor, possessing all necessary government permits and authorizations and maintaining requisite insurance policies and bonds.

11. Defendant Michael Hall Lombardi (MH Lombardi) is a natural person of the full age of majority, residing in the State of New York at all times relevant to this Complaint, and who holds himself out to be a construction project manager, fully qualified to do business within the State of New York. and possessing all necessary government permits and authorizations and maintaining requisite insurance policies and bonds.

12. Defendant Lombardi Consulting (LC) is a business entity maintaining offices in the State of New York at all times relevant to this Complaint, and which holds itself out to be a construction  management consulting firm,  fully qualified to do business within the State of New York, and possessing all necessary government permits and authorizations and maintaining requisite insurance policies and bonds.

### FACTUAL BACKGROUND

### *A.*  Introduction

13. As described in detail herein, this matter involves a pattern of fraud, deceit, conversion, breach of contract, negligence, misrepresentation, unfair business practices, and professional malpractice,  as elements of a conspiracy by Defendants.

14. The named Defendants purposely conspired with malice aforethought to defraud Plaintiffs in connection with their efforts to reconstruct and convert to condominiums the landmark building located at 56 Walker Street in New York City, Borough of Manhattan, Block: 194, Lot: 4 ("Walker Landmark Premises") with the objective of depriving them of compensation, and profits on real property which is valued in excess of $20 million.

15. While the nexus of this conspiracy was discovered only recently, its roots date back to 2005, and over time, a number of actions have, as part of the illegal pattern of activities and continuing fraud, been taken by Defendants against the Plaintiffs that have all been designed to misappropriate private property and cover-up an extensive illegal enterprise, involving abuse and misuse of professional services pursuant to permits and licenses granted by officials in the New York State and City governments.

16. The conspiracy came to light only weeks ago with the discovery of evidence of a scheme to falsify engineering survey reports and surveys, to  deliberately cover-up untested building-wide fire safety equipment and substandard construction,  and to engage in a campaign of harassment, all designed  to result in needless construction work and significant expense, and cause further extensive delays and disruptions in completing Plaintiffs' construction project at the Walker Landmark Premises. Discovery of this illegal scheme has led to further investigations of Defendants' prior work, and resulted in the uncovering of evidence of a pattern of illegal activities, and to the filing of the instant complaint.

17. It has also recently been discovered by Plaintiffs that Defendants have plotted and conspired to use defective and substandard materials, harassment to secure stop work orders against the project , to slow and even stop the construction project, cause hundreds of thousands of dollars of extra expense, and endanger Plaintiffs' continuing economic interest in the Walker Landmark Premises.

## B.  Past History of Walker Landmark Premises Project

19. Walker Landmark Premises is a classic store / loft building with a period marble/ cast iron facade located in Manhattan's TriBeCa District. Originally erected in 1866 for Joseph Bayley, a fancy goods merchant, the building subsequently served as headquarters for the Wiley Publishing Company, publisher of such renowned authors as James Fenimore Cooper, Washington Irving, Hans Christian Anderson, Victor Hugo and Charles Dickens.

20. Prior to purchasing the Walker Landmark Premises,  Plaintiff G. Morris, together with his business partner, Lenny Charles,  entered and maintained a long term lease of the building for use by their television production business (SG Media), which they founded and have operated since 1996 .

21. In mid-2003, the then building owner decided to place the Walker Landmark Premises on the market, and Plaintiff G. Morris purchased the building for $3 million in November 2003 through Plaintiff 56W LLC, a wholly owned limited liability company with financing personally guaranteed in full by Plaintiff G. Morris.

22. To finance the condo conversion project, Plaintiffs secured construction loan financing in early 2004 from Community Capital Bank of Brooklyn (CCB), also fully guaranteed by Plaintiff G. Morris.

### C. First Stage of Conversion of Walker Landmark Premises

23.Plaintiffs began a construction project in 2004, at the premises with the objective of converting the upper three of the original six floors to apartment condominiums, using a simple, so-called "white box" design.

24.The plan for the remaining three floors was and remains to be reserved to SG Media for use in connection with its television production business. The first or ground floor has been finished as a stage, the second floor houses the television technical control facilities, studio and work area. The basement has been designed as a combined utility and reception area.

25.Due to initial construction problems related to the contractor first employed by Plaintiff G. Morris, including litigation filed by the contractor, it became necessary to discharge the contractor and suspend the conversion project.

### D.    Second Stage of Conversion of Walker Landmark Premises

26.As a result of the difficulties experienced during the first stage of the conversion, a replacement construction team was brought in by Plaintiff G. Morris, including a new contracting company, Defendant VCD, headed by its principal, Defendant Lee, and a construction management company (Defendant Lombardi Consulting) and its principal, Defendant MH Lombardi.

27. The architectural firm of Joseph Pell Lombardi was also retained to develop an altered plan for Walker Landmark Premises to meet the specific and expanded requirements of Plaintiffs.  (Joseph Pell Lombardi is the father of Defendant MH Lombardi.)

28. Plaintiff G. Morris decided to seek a new architectural plan in order to maximize the space provided by the high ceilings at Walker Landmark Premises, thereby increasing the total useable floor space area within the building.

29. Reflecting the directions of the Plaintiff G. Morris, Lombardi architects developed an expanded design for the Walker Landmark Premises, which added one or two mezzanines on several floors, thereby increasing the useable floor space by some 2000 square feet.

30. The Walker Landmark Premises re-design also provided for the addition of a 1900+ square foot penthouse, together with a 700 square foot roof-top terrace, plus front and rear terraces adjoining the penthouse floor.

### E.   Titan Capital Financing and Representations by Defendants

31. To accommodate the design changes, Plaintiff G. Morris refinanced the original CCB note in December 2005 with Titan Capital (Titan).

32. In about December 2005, Defendants Lee and VCD presented Plaintiff G. Morris with services contracts and associated building construction schedules that called for the completion of the entire construction project within twelve months.

33. Defendants Lombardi Consulting and MH Lombardi also agreed to the twelve month construction schedule.

34. Under its contract, Defendant VCD was to be paid $ 2.2 million to complete the construction project within the stated twelve month period.

35. Under Plaintiffs' contract with Lombardi Consulting, MH Lombardi was to be paid at the rate of $1,500.00 per week throughout the period of construction.

36. Copies of the building budget and time schedules developed by Defendants Lee, VCD, Lombardi Consulting, MH Lombardi and Lombardi architects were provided to Titan, which approved the loan to Plaintiffs in the amount of $6.3 million.

37. Approximately six months following closing of the Titan loan, a serious dispute arose with the lender as a result of what was reportedly described as a miscalculation by Defendants related to the construction budget they developed for the project and which had been submitted to Titan.

38. A full and detailed explanation of the dispute between Titan and Defendants has to this date not been provided to Plaintiffs by Defendants.

39. As a result of the dispute with Defendants over the previously approved construction budget, Titan, pursuant to the express terms of its loan agreement, elected not to proceed with the Walker Landmark Premises construction project.

40. The termination of the Titan loan significantly delayed the project and required Plaintiffs to pay in excess of $750,000 in direct expenses for interest and other direct and indirect costs.

**F.   Madison Capital Financing and Defendants' Representations**

41. Following Titan's decision not to proceed with its loan, which resulted from its dispute with Defendants, Plaintiff G. Morris was forced to secure replacement financing for the project, thereby incurring significant legal and financing expenses.

42. The new financing was concluded with Madison Capital (Madison) on May 23, 2006 in the amount of $8.75 million, and included over $1.5 million in financing and related closing costs.

43. The significant costs incurred by Plaintiffs under the Madison loan directly resulted from the withdrawal of Titan from the construction project caused by the combined actions by Defendants which led to the dispute with Titan.

44. Under the terms of the Madison refinancing, Defendants were required to complete the Walker Landmark Premises project by June 2007.

45. Defendants Lee, VCD, Lombardi Consulting and MH Lombardi agreed to the new construction schedule.

46. Following the closing of the Madison loan, a series of changes in the construction plan and implementation required by the Defendants caused additional significant delays and cost overruns with respect to the Walker Landmark Premises building project.

47. At various times, Plaintiff G. Morris expressed his displeasure with Defendants at the significant delays and rising costs encountered with regard to the building construction.

48. On a majority of work days, Defendant VCD only assigned what could properly be described as skeleton work crews often consisting of a total of 4,5 or 6 people, some skilled and many unskilled, working at the premises.

49. Substantial delays were also experienced as a result of the failure of many of the subcontractors employed by Defendant VCD to undertake their assigned tasks in a timely fashion and in accordance with the established schedule.

50. As a general rule, Defendant MH Lombardi only came by the premises on an infrequent basis.

51. Defendant VCD submitted large change order invoices for work that was completed and then, without proper planning, the work was redesigned and changed (occasionally more than once), including plumbing and other major building installations, delaying the project.

52. As these significant construction delays continued, Defendants submitted to Plaintiffs substitute schedules and timelines for completion, and in each case, these new plans repeatedly extended the project out by three to six month increments.

53. With the building at approximately the 85% completion stage in June 2007, the Madison note matured.

54. Plaintiffs secured a short term extension of the Madison Note, but were required to seek another financing source to complete the project, thereby incurring substantial costs and expenses, as a result of Defendants' failure to meet the schedule agreed to with the financial institution.

### G.  WexTrust Capital Financing and Defendants' Representations

55. In September 2007, Plaintiffs secured a refinancing loan from WexTrust Capital (WexTrust) in the amount of  $11.3 million.

56. In securing the WexTrust Capital loan, it was necessary for Plaintiffs to incur significant additional costs, including interest reserve, finance fees, attorney charges, filing and financing fees, taxes, etc, totaling over $ 2.5 million, as well as to pledge significant additional personal assets as security for the loan.

57. Plaintiffs incurred these increased costs as a direct result of the negligent and intentional delays, disruptions, changes in construction continuously caused (directly and indirectly) by Defendants.

58. The loan as provided by WexTrust was based upon the specific representation by Defendants that the construction work at the Walker Landmark Premises would be completed no later than the last week of November 2007.

59. With the Walker Landmark Premises construction project under Defendants' direct management and control, little or no actual construction work took place at premises during the period extending from late September through mid

December 2007, causing the project to come to what was in essence a complete standstill.

## H. Construction Status Review Meeting on March 24, 2008

60.On or about March 24, 2008, a construction status review meeting was held at the offices of WexTrust (114 West 47th Street New York, New York.), which included, among others, representatives of WexTrust ( Amnon Cohen, director merchant banking (A. Cohen) and Shlomo Haft, investment officer merchant banking (S. Haft) , the Defendants, Plaintiff  G. Morris (attending via telephone link) and Lenny Charles, Lloyd Hart, consultant (L. Hart), and Ellen Schweninger of Douglas Elliman Real Estate.

61.At the status meeting, Defendant MH Lombardi presented a revised construction schedule supported by Defendant Lee that by its terms extended work until mid August 2008.

62.Representatives of WexTrust asked why the construction had been delayed to such a great degree to that date, noting that the Defendants' construction schedule presented at the time the loan was closed in August 2007 projected that the building would be completely finished by late November 2007.

63. A. Cohen, representing WexTrust, observed that they had determined that no substantial work had taken place at the building between September and November 2007.

64. Defendant MH Lombardi initially stated that the reason for the construction slowdown could be traced to the delay in submitting the 56 Walker Street Condominium Offering Plan application to the New York State Attorney General's Office.

65. WexTrust representative A. Cohen properly rejected MH Lombardi's explanation, noting that the timing of the filing of the condominium application with the New York Attorney General's Office had only come up in late December, and was concluded with the filing of the report in early February 2008.

66. A. Cohen did not agree with the positions presented by Defendants MH Lombardi  and  Lee, stating again that the schedule he had been given at the loan closing called for completion by the end of November.  He stressed that the specific target dates included in that schedule had not been met.

67. Defendant Lee then stated that some problems had arisen with sewer piping, which had not been addressed. Lee stated that the sewer pipe under Walker Street had collapsed and had to be replaced involving a complicated and time

consuming process. (See Exhibit 1 Change Orders submitted by VCD related to proposed sewer pipe replacement work.)

68.A. Cohen stated that he could not agree with the grounds given by the Defendants Lee and MH Lombardi for such an inordinate delay in completing the construction work in accordance with the schedule presented at the loan closing.

69.A. Cohen observed that the WexTrust loan would be coming due in June, which could not be extended if the building was not substantially completed by then.

70.A. Cohen noted that following completion of construction, additional time would be needed to conduct the sales of the various condominium units, thus requiring additional funding. He estimated that the cost of the refinancing could be in the range of $800,000.00.

## I. **Termination of Defendant MH Lombardi**

71.When the March 24 status meeting resumed after a short recess, Plaintiff G. Morris (via telephone) stated that he could no longer accept the record of unexplained work stoppages, lack of progress and inordinate delays on the project.

72. Plaintiff G. Morris said that an immediate management change was necessary.

73. Plaintiff G. Morris directed that L. Hart was to be brought in as project manager immediately to replace Defendant MH Lombardi and Lombardi Consulting.

### J. **Threat by Defendant MH Lombardi and Demand for Payment of $50,000**

74. Several days following the March 24 meeting, Defendant MH Lombardi called Lenny Charles to demand payment of an additional $50,000.00, which he described as owing to him as past due consulting fees.

75. Lenny Charles told Defendant MH Lombardi that he did not believe any such monies were owing to him.

76. During the conversation, Defendant MH Lombardi cautioned Mr. Charles that he could intervene with the necessary parties to prevent Plaintiffs from obtaining permits for the Walker Landmark Premises.

77. Lenny Charles told Defendant MH Lombardi that he would pass his message on to the Plaintiff G. Morris and others.

## K    Construction Status Meeting of April 8, 2008

78.At 10 am on April 8, 2008, a construction progress meeting was held at the 56 Walker Street site attended by, among others,  L. Hart, construction manager, Defendant Lee , Ellen Schweninger of Douglas Elliman Real Estate.   Shlomo Haft, investment officer, WexTrust, Lenny Charles, and Plaintiff G. Morris (attending via telephone link).

79.At the start of the meeting, L. Hart announced that he had started an investigation into the report by Defendants Lee and M Lombardi at the March 24 meeting, which had described the collapsed condition of the main sewer pipe under Walker Street, which joined the building to the city system.

## L. Discovery of Fraudulent Sewer Pipe Change Order

80.At the April 8 meeting, L. Hart, the new project manager, stated that he had been told that the initial sewer pipe videotape, which had been ordered by and viewed by both the Defendants MH Lombardi and Lee, was presently in the custody of Defendant MH Lombardi.

81.L. Hart  retained A&L Cesspool Service Corp. (A&L)  to survey the sewer installation by using a video camera to establish the sewer pipe's current condition.

82.L. Hart confirmed that Defendant MH Lombardi had refused a request to release the first video tape until he had been paid $50,000, which he claimed was owing to him for past services.

83. Surveyor, A&L, in writings dated April 15, 2008 confirmed that their investigation showed that the pipe connection from 56 Walker Street into the street was in good condition all the way to the junction with the city pipe. (See Exhibit 2, Copy of Invoice including survey findings by A-L and separate letter from Livio Forte.)

84. The change orders previously submitted to Plaintiffs by Defendant Lee called for the complete replacement of the sewer pipe, a major project requiring, among other things, closing Walker Street, a main thoroughfare, to dig up and work on the sewer pipe.

85. The change orders for the sewer pipe as submitted and signed by Defendant Lee totaled over $65,000. (See Exhibit 1, supra.)

86. The supplemental report from A&L, confirmed that no prior damage had taken place and that the sewer pipe was and remained in good condition.

87. A report from a second survey company ( Alerton Water & Sewer Maine Inc. (Alerton)), dated June 2, 2008 confirmed absence of any damage to the sewer pipe under Walker Street. (See Exhibit 3 Alerton Invoice No. 001 dated June 2, 2008 for sewer inspection and other plumbing work.)

N. **Refusal of Defendant Lee to Permit Additional Crews to Speed Up Work and Demand for Additional Monies**

88. At the April 8 meeting, the project manager proposed speeding up construction, by bringing in additional personnel to supplement those provided by Defendants Lee and VCD.

89. Defendant Lee stated that he would not under any circumstances report to, or take orders from, L Hart, the new project manager.

90. As the April 8 meeting proceeded, Defendant Lee sought immediate payment of a past due amount of $78,000.00 dating to 2006, under the initial and subsequently superseded VCD construction contract with Plaintiffs (Replaced Contract) for the Walker Landmark Premises.

91. Defendant Lee stated that he wanted the $78,000 paid immediately, and that if it was paid, he would do what he could to speed up construction, but that he could not and would not meet the June 27 target date.

92. Plaintiff G. Morris subsequently confirmed that  issues related to payments under the Replaced Contract  between Plaintiffs and VCD had been addressed  earlier by the parties in a separate agreement, which provided that any monies due VCD would be paid following the final completion of the Walker Landmark Premises construction project and not earlier.

### O.  Failure of Defendants Lee and VCD to Properly Pay Subcontractors

93. At the April 8 meeting, S. Haft discussed problems which had been encountered with respect to subcontractors not receiving payment from Defendant Lee and/or VCD. L. Hart, the project manager, confirmed that both the elevator subcontractor and the façade subcontractor had reported not receiving full payments from Defendants Lee or VCD.  S. Haft cited his accounting reports showing that he had forwarded appropriate payment for these subcontractors to Defendant Lee.

94. Defendant Lee, while initially stating that all subcontractors had been properly paid all amounts due, subsequently admitted that he had not forwarded $25,000 of the $35,000 that he had been paid by WexTrust to the Rotavele Company , the elevator subcontractor. Upon information and belief, certain payments to Defendant VCD for Rotavele by 56 Walker were not properly credited to the account of Plaintiff 56W LLC.

95. Upon information and belief, Brave Construction, the façade subcontractor, was not timely paid the full amount paid to Defendant VCD by Plaintiff 56W LLC for its work.

### P.  Termination of Defendant Lee For Cause

96. Shortly following the April 8 meeting, Plaintiff made the decision to discharge Defendant Lee and his company, VCD, for cause.

97. Among the reasons cited for the termination of Defendants were the following: inability to complete work project on time; discrepancies with respect to subcontractor payments and change orders (e.g. sewer line replacement); and subcontractor delays.

98. A letter of termination was faxed to the Defendant Lee on April 11, 2008.

**Q.  NYC Fire Department and NYC Building Department  Inspection and Stop Work Order Orchestrated by Defendant Lee and VCD**

99. After Defendant Lee's discharge and, on or about April 20, 2008, a fire inspector of the City of New York Fire Department (NYFD) (later joined by an inspector from the NYC Building Department) arrived at the Walker Landmark Premises to inspect the fire extinguisher system as installed at the building.

100. The fire inspector found that the fire extinguisher system was not operable on the sixth floor.

101. Upon inspection it was determined that the fire sprinkler system was not operable and was incomplete on the 6th floor, and it was discovered that the system was not charged in the basement and floors 1, 3 4 5 and 6, causing the Building Inspector to write a stop work order, halting all further work at the premises until such time as the fire extinguisher system was certified to be in proper working order, requiring charging and certification by a plumber.

102. In subsequently checking the permits that had been filed by Defendant Lee for the building, it was discovered that certain permits had lapsed the day after Defendant Lee had been discharged, and others had lapsed as long as two years earlier, and that the necessary plumbing permits had not been secured, were incomplete and unpaid, resulting initially in $12,000 fine.

103. By allowing the permits to lapse the Defendant Lee had violated the applicable New York City laws, as well as the VCD contract with Plaintiffs.

## R.  Cover-up of Untested Sprinkler System

104. Following the issuance of the stop work order by the NYC Building Department, on or about April 20, 2008, the project manager conducted a test of the fire extinguisher system that had been installed by VCD at the Walker Landmark Premises.

105. During the fire extinguisher system test , leaks were immediately discovered on the third, fourth and sixth floors of the Walker Landmark Premises.

106. The fire extinguisher system leaks discovered during the test caused significant water and related damage to the walls installed by Defendant VCD and the floors of the building.

107. In addition, it was discovered that the fire extinguisher system had not been properly tied into the building drainage system, but rather had been left to drain into the bottom of the elevator room and into the adjoining basement area.

108. The failure to tie the fire extinguisher system into the building's drainage system caused significant damage by compromising the elevator's hydraulic fluid, requiring the fluid to be replaced.

**S.   Defendant David Lee's Securing of Payment Invoices**

**Based on Misrepresentation and Cover-up of Untested System**

109.A short time prior to his termination, Defendant Lee secured payment of a VCD invoice for completing the sheetrocking of the building.

110.In securing this payment for sheetrocking, Defendant Lee had represented to the inspector assigned by WexTrust to certify the satisfactory completion of the construction work that the fire extinguisher system as installed behind the sheetrock had been properly tested, certified  and was fully loaded and operational.

111.Upon information and belief,  Defendant Lee  represented to NYFD inspectors on an earlier date that the fire extinguisher system at the Walker Landmark Premises was properly tested and fully loaded, and operational.

112.Upon information and belief, Defendant Lee's cover-up of the inoperable sprinkler system violated NYC laws and ordinances by falsely stating to NYFD inspectors that the fire extinguisher system was properly tested and fully loaded, and operational, created an unsafe condition on Plaintiffs' premises.

**T.   Issuance of a Stop Work Order Against the Building After**

**Defendants' Discharge**

113. Upon information and belief, Defendant Lee was the source of a complaint to the NYFD or about April 20 that the building was without a properly operating and charged fire extinguisher system.

114. The Defendant VCD previously installed the fire extinguisher system within the Walker Landmark Premises

115. Upon information and belief, Defendant Lee had to be fully knowledgeable that that the building would fail inspection when he reported to the NYFD that the fire extinguisher system at the Walker Landmark Premises should be inspected.

116. Upon information and belief,  Defendant Lee, as a knowledgeable contractor, knew or should have known that in the event the NYFD found that the fire extinguisher system was not properly installed, a stop work order would be issued, closing down the construction project.

### U.  **VCD Invoices Contain Improper, Unapproved Charges and Overcharges**

117. The VCD invoice for kitchen cabinets included a markup of over 100%, which was wrongful and never disclosed to the Plaintiffs.

118. The VCD invoice for kitchen appliances ordered for the Walker Landmark Premises included five full sets, although only four sets were required for the building. The

ordering of an extra set of appliances by Defendants Lee and VCD constituted an

unapproved charge against the building account.


## V.  Work Stoppages and Delays Caused by Defendant Lee


119.As a result of the Stop Work Order issued by the NYFD on or about April 20, 2008,

Plaintiffs have experienced significant delays in the completion of construction and face

substantial cost overruns.


120.Upon information and belief, the lapsing of various permits (including the fire

extinguisher system permit) as previously secured by Defendant Lee has also caused

significant delays in construction and given rise to substantial cost overruns.


121. Upon information and belief, cost overruns were created by Defendant Lee through,

among other things, work slowdowns, improper permitting, failure to timely order building

supplies, failure to order building finishes (including appliances and cabinets), creation of

improper change orders, securing of stop work orders, and failure to properly inspect

Defendant VCD'S and subcontractors' work.


## W.  Failure to Install Proper Standpipe as Key Component of Fire
## Protection System in Building


122.On or about  June 20,2008 , the New York City Building Department issued another

stop work order on discovering that the building had not installed a working standpipe

system.

123.Upon information and belief, from the outset of his involvement with the project, Defendants Lee, VCD and MH Lombardi refused to install a standpipe system.

124.At various times, the building received citations for this omission, however, neither Defendant Lee or ML Lombardi took steps to install a standpipe system.

125.The refusal of Defendant Lee and ML Lombardi to comply with established building code requirements by installing a working standpipe system directly violated the law and for a period of some three years endangered all work crews, professional staff, visitors and others who were present at the premises.

126.The entry of the stop work order and the Building Department's enforcement on June 20, 2008, requiring installment of a working standpipe system at the building during the final stage of renovation, has caused Plaintiffs to suffer further avoidable delays in construction, as well as significant increased charges.

**X.  Defendants Lee, VCD and M Lombardi Failed to Properly Install Proper Shaft for the New Elevator Installation at the Building**

127.On or about June 30,2008 , the Rotavele Company, while installing the new elevator at the Walker Landmark Premises, determined that the hydraulic shaft as ordered by Defendants Lee, VCD and MH Lombardi and installed at Walker Landmark Premises, was some five feet short, and therefore did not reach the landing on the penthouse floor.

128.Defendants Lee and VCD were in charge of ordering the proper elevator equipment to be installed at Walker Landmark Premises.

129.The failure of Defendants Lee, VCD and MH Lombardi to properly order and inspect the elevator equipment for Walker Landmark Premises has caused critical delays in completing the construction project and increased Plaintiffs' overall costs and expenses.

## COUNT 1
### FRAUD BY COMMISSION, OMISSION AND NONDISCLOSURE

130.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

131.All the Defendants knew there was an illegal or improper object to be accomplished: to deprive Plaintiffs of their property through fraud by commission, omission and nondisclosure.

132.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of said fraudulent acts.

133.As a result of said fraudulent acts, Plaintiffs are now and will continue to suffer irreparable injuries and monetary damages.   Plaintiffs are entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $15,000,000 and for punitive damages in an amount

to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 2
### COMMON LAW CONSPIRACY

134. Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

135. All the Defendants knew there was an illegal or improper object to be accomplished; to deprive Plaintiff of his property through a conspiracy.

136. Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of said conspiratorial acts.

137. As a result of Defendants' conspiracy, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 3
### BREACH OF CONTRACT

138. Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

139. Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of breaches of contracts by Defendants.

140. As a result of Defendants' actions constituting breach of contract, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 4
### NEGLIGENCE

141. Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

142. Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the negligent acts of Defendants.

143. As a result of Defendants' actions constituting negligence, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $15,000,000 and for punitive damages

in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 5
**FRAUD IN THE INDUCEMENT**

144.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

145.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the fraudulent acts induced by Defendants.

146.As a result of Defendants' actions constituting fraud in the inducement, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of least $15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 6
**CONSTRUCTIVE FRAUD**

147.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

148.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the constructive fraud of Defendants.

149. As a result of Defendants' actions constituting constructive fraud, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of least $ 15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

### Count 7

**MISREPRESENTATION**

150. Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129  above with the same force and effect as if herein set forth.

151. Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the acts of misrepresentation of Defendants.

152. As a result of Defendants' actions constituting misrepresentation, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of least $!5,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

### Count 8

**UNFAIR BUSINESS PRACTICES**

153.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

154.Plaintiffs have suffered  direct harm and damages, as stated *supra*, as a direct result of the unfair business practices of Defendants.

155.As a result of Defendants' actions constituting unfair business practices, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

Count 9

**PROFESSIONAL MALPRACTICE**

156.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

157.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the professional malpractice of Defendants.

158.As a result of Defendants' actions constituting professional malpractice, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least  $15,000,000 and for punitive

damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 10
### CONVERSION

159.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129 above with the same force and effect as if herein set forth.

160.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the acts of conversion of Defendants.

161.As a result of Defendants' actions conversion, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.    Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $ 100,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 11
### DECEIT

162.Plaintiffs repeat and reallege the allegations in ¶¶ 1 through 129  above with the same force and effect as if herein set forth.

163.Plaintiffs have suffered direct harm and damages, as stated *supra*, as a direct result of the acts of deceit of Defendants.

164. As a result of Defendants' actions constituting deceit, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages.   Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $ 15,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## Count 12
### INFLICTION OF EMOTIONAL DISTRESS

165. Plaintiff Morris repeats and re-alleges the allegations in ¶¶ 1 through 129 above with the above with the same force and effect as if herein set forth.

166. Defendants have continually negligently inflicted emotional distress on the Plaintiff.

167. Defendants had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Plaintiff.

168. Defendants breached their duties to Plaintiff.

169. Plaintiff was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the reckless actions of Defendants.

170. As a result of the reckless conduct of Defendants, Plaintiff G. Morris has suffered and will continue to suffer pain, anguish, emotional trauma, among other symptoms.

171. As a result of Defendants' concerted actions against Plaintiff, Plaintiff is now and will continue to suffer irreparable injuries and monetary damages, as well as damages for mental anguish. Plaintiff is entitled to an award against all the Defendants, jointly and severally, for actual, general, special, compensatory damages in the amount of at least $1,000,000 and for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief as the Court deems to be just, fair, and appropriate.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court enter Judgment and an Order as follows:

a. First Cause of Action, in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b. Second Cause of Action: in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees

c. Third Cause of Action in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d. Fourth Cause of Action in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e. Fifth Cause of Action: in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees

f. Sixth Cause of Action: in excess of fifteen million ($15,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

g. Seventh Cause of Action: in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

h. Eighth Cause of Action: in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

i. Ninth Cause of Action in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees

j. Tenth Cause of Action: in excess of one hundred thousand dollars ($100,000.00) dollars as well as punitive damages, costs and attorney's fees

k. Eleventh Cause of Action: in excess of fifteen million ($15,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

l. Twelfth Cause of Action: in excess of one million ($1,000,000-00) dollars as well as punitive damages, costs and attorney's fees.

m. Equitable relief: ordering that Defendants be estopped from taking actions designed to in any way injure Plaintiffs or interfere with the completion and operation of the Walker Landmark Premises

n. Interest and pre-judgment interest on the amount described above, calculated at the prevailing rate

o. Such other legal and equitable relief as the Court deems just and proper.


New York, New York
Dated: July 25, 2008

Dickerson, Tomaselli & Mullen,LLP
Attorneys for Plaintiffs Guy Morris
and 56 Walker, LLC


By _Charles M Tomaselli_
Charles M. Tomaselli
(CT 9719)
780 Third Avenue
New York, NY 10007
Tel: (212) 943-7000
Fax: (212) 486-3032

**EXHIBIT 1**

**Change Orders Submitted by VCD Construction, Inc.**

# ▲AIA Document G701™ – 2001

## Change Order

| PROJECT: *(Name and address)* | CHANGE ORDER NUMBER: | | OWNER ☐ |
|---|---|---|---|
| 56 Walker Street | DATE: | Thirty Three 12/12/2007 | ARCHITECT ☐ |
| New York, NY 10013 | ARCHITECT'S PROJECT NUMBER: | | CONTRACTOR ☐ |
| TO CONTRACTOR: *(Name and address)* | | | FIELD ☐ |
| VCD Construction Inc. | CONTRACT DATE: | | OTHER ☐ |
| 35 Carroll Street | | | |
| Brooklyn, NY 11231 | CONTRACT FOR: | | |

The Contract is changed as follows:
*(Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives)*

| | | |
|---|---|---|
| Furnish and install 2" domestic water and new sewer piping | $ | 46,300 |
| General Condition | $ | 4,167 |
| Overhead and profit | $ | 5,046 |
| | $ | 55,513 |

| | | |
|---|---|---|
| The original (Contract Sum) (Guaranteed Maximum Price) was | $ | _____ |
| The net change by previously authorized Change Orders | $ | _____ |
| The (Contract Sum) (Guaranteed Maximum Price) prior to this Change Order was | $ | _____ |
| The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (decreased) (unchanged) | | |
| by this Change Order in the amount of | $ | _____ |
| The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be | $ | _____ |

The Contract Time will be (increased) (decreased) (unchanged) by ( ) days

The date of Substantial Completion as of the date of this Change Order therefore is

*(Note: This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive.)*

**NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.**

| Joseph Pell Lombardi Associate | VCD Construction Inc. | 56 Walker LLC |
|---|---|---|
| ARCHITECT *(Firm name)* | CONTRACTOR *(Firm name)* | OWNER *(Firm name)* |
| 401 Washington Street | 35 Carroll Street | 56 Walker Street |
| New York, NY 10013 | Brooklyn, NY 11231 | New York, NY 10013 |
| ADDRESS | ADDRESS | ADDRESS |
| | | |
| BY *(Signature)* | BY *(Signature)* | BY *(Signature)* |
| | DAVID | |
| *(Typed name)* | *(Typed name)* | *(Typed name)* |
| | 12/12/07 | |
| DATE | DATE | DATE |

CAUTION: You should sign an original AIA Contract Document, on which this text appears in RED. An original assures that changes will not be obscured.

AIA Document G701™ – 2001. Copyright © 1979, 1987, 2000 and 2001 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® or any portion of it, may result in ...

# ▓AIA˙ Document G701™ – 2001

## Change Order

| PROJECT: (Name and address) | CHANGE ORDER NUMBER: | | OWNER ☐ |
|---|---|---|---|
| 56 Walker Street<br>New York, NY 10013 | DATE: | Thirty Three<br>12/12/2007 | ARCHITECT ☐ |
| | ARCHITECT'S PROJECT NUMBER: | | CONTRACTOR ☐ |
| TO CONTRACTOR: (Name and address) | | | FIELD ☐ |
| VCD Construction Inc.<br>35 Carroll Street<br>Brooklyn, NY 11231 | CONTRACT DATE:<br><br>CONTRACT FOR: | | OTHER ☐ |

The Contract is changed as follows:
(Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives)

| Furnish and install 2" domestic water and new sewer piping | $ | 46,300 |
|---|---|---|
| General Condition | $ | 4,167 |
| Overhead and profit | $ | 5,046 |
| | $ | 55,613 |

The original (Contract Sum) (Guaranteed Maximum Price) was .................... $ _____

The net change by previously authorized Change Orders .................... $ _____

The (Contract Sum) (Guaranteed Maximum Price) prior to this Change Order was .................... $ _____

The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (decreased) (unchanged)

by this Change Order in the amount of .................... $ _____

The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be .................... $ _____

The Contract Time will be (increased) (decreased) (unchanged) by     (     ) days

The date of Substantial Completion as of the date of this Change Order therefore is

(Note: This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive.)

NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.

| Joseph Pell Lombardi Associate | VCD Construction Inc. | 56 Walker LLC |
|---|---|---|
| ARCHITECT (Firm name) | CONTRACTOR (Firm name) | OWNER (Firm name) |
| 401 Washington Street | 35 Carroll Street | 56 Walker Street |
| New York, NY 10013 | Brooklyn, NY 11231 | New York, NY 10013 |
| ADDRESS | ADDRESS | ADDRESS |
| | | |
| BY (Signature) | BY (Signature) | BY (Signature) |
| | DAVID IZ | |
| (Typed name) | (Typed name) | (Typed name) |
| | 12/12/07 | |
| DATE | DATE | DATE |

CAUTION: You should sign an original AIA Contract Document, on which this text appears in RED. An original assures that changes will not be obscured.

AIA Document G701™ – 2001. Copyright © 1979, 1987, 2000 and 2001 by The American Institute of Architects. All rights reserved. WARNING: This AIA™ Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA™ Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

 **AIA**® Document G701™ – 2001

## Change Order

| PROJECT: (Name and address) | CHANGE ORDER NUMBER: | | | OWNER ☐ |
|---|---|---|---|---|
| 58 Walker Street<br>New York, NY 10013 | DATE: | Thirty Two<br>12/12/2007 | | ARCHITECT ☐ |
| | ARCHITECT'S PROJECT NUMBER: | | | CONTRACTOR ☐ |
| TO CONTRACTOR: (Name and address)<br>VCD Construction Inc.<br>35 Carroll Street<br>Brooklyn, NY 11231 | | | | FIELD ☐ |
| | CONTRACT DATE: | | | OTHER ☐ |
| | CONTRACT FOR: | | | |

The Contract is changed as follows:

*(Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives)*

| Relocation of electric service due to sewer piping | $ | 6,000 |
|---|---|---|
| General Condition | $ | 540 |
| Overhead and profit | $ | 654 |
| | $ | 7,194 |

The original (Contract Sum) (Guaranteed Maximum Price) was                                         $ _____

The net change by previously authorized Change Orders                                         $ _____

The (Contract Sum) (Guaranteed Maximum Price) prior to this Change Order was                 $ _____

The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (decreased) (unchanged)
by this Change Order in the amount of                                                         $ _____

The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be         $ _____

The Contract Time will be (increased) (decreased) (unchanged) by                           ( ) days

The date of Substantial Completion as of the date of this Change Order therefore is

*(Note: This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive.)*

**NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.**

| Joseph Pell Lombardi Associate | VCD Construction Inc. | 56 Walker LLC |
|---|---|---|
| ARCHITECT (Firm name)<br>401 Washington Street<br>New York, NY 10013<br>ADDRESS | CONTRACTOR (Firm name)<br>35 Carroll Street<br>Brooklyn, NY 11231<br>ADDRESS | OWNER (Firm name)<br>58 Walker Street<br>New York, NY 10013<br>ADDRESS |
| BY (Signature) | BY (Signature)  *D+7* | BY (Signature) |
| | DAVID LEE | |
| (Typed name) | (Typed name) | (Typed name) |
| DATE | DATE  12/12/07 | DATE |

CAUTION: You should sign an original AIA Contract Document, on which this text appears in RED. An original assures that changes will not be obscured.

AIA Document G701™ – 2001. Copyright © 1979, 1987, 2000 and 2001 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. Purchasers are permitted to reproduce ten (10) copies of this document when completed. To report copyright violations of AIA Contract Documents, e-mail The American Institute of Architects' legal counsel, copyright@aia.org.



# AIA® Document G701™ – 2001

## Change Order

| PROJECT: *(Name and address)* | CHANGE ORDER NUMBER: | | | OWNER ☐ |
|---|---|---|---|---|
| 56 Walker Street | DATE: | **Thirty Four** 12/12/2007 | | ARCHITECT ☐ |
| New York, NY 10013 | ARCHITECT'S PROJECT NUMBER: | | | CONTRACTOR ☐ |
| TO CONTRACTOR: *(Name and address)* | | | | FIELD ☐ |
| VCD Construction Inc. | CONTRACT DATE: | | | OTHER ☐ |
| 35 Carroll Street | CONTRACT FOR: | | | |
| Brooklyn, NY 11231 | | | | |

The Contract is changed as follows:
*(Include, where applicable, any undisputed amount attributable to previously executed Construction Change Directives)*

Video service to check damage to sewer line        $ 500
    General Condition        $ 45
    Overhead and profit        $ 54
                      $ 599

The original (Contract Sum) (Guaranteed Maximum Price) was        $ _____

The net change by previously authorized Change Orders        $ _____

The (Contract Sum) (Guaranteed Maximum Price) prior to this Change Order was        $ _____

The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (decreased) (unchanged)

by this Change Order in the amount of        $ _____

The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be        $ _____

The Contract Time will be (increased) (decreased) (unchanged) by        (        ) days

The date of Substantial Completion as of the date of this Change Order therefore is

*(Note: This Change Order does not include changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive until the cost and time have been agreed upon by both the Owner and Contractor, in which case a Change Order is executed to supersede the Construction Change Directive.)*

**NOT VALID UNTIL SIGNED BY THE ARCHITECT, CONTRACTOR AND OWNER.**

| Joseph Pell Lombardi Associate | VCD Construction Inc. | 56 Walker LLC |
|---|---|---|
| ARCHITECT *(Firm name)* | CONTRACTOR *(Firm name)* | OWNER *(Firm name)* |
| 401 Washington Street | 35 Carroll Street | 56 Walker Street |
| New York, NY 10013 | Brooklyn, NY 11231 | New York, NY 10013 |
| ADDRESS | ADDRESS | ADDRESS |
| BY *(Signature)* | BY *(Signature)* | BY *(Signature)* |
| | 12/12/07 | |
| *(Typed name)* | *(Typed name)* | *(Typed name)* |
| | DAVID LEE | |
| DATE | DATE | DATE |

CAUTION: You should sign an original AIA Contract Document, on which this text appears in RED. An original assures that changes will not be obscured.

AIA Document G701™ – 2001. Copyright © 1979, 1987, 2000 and 2001 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

P.11        To: 16496138222        06-2008 13:26:13 From:

**EXHIBIT 2**

**A&L Cesspool Service Corp. Invoice and Reports on Sewer Inspection**

Jun 23 08 10:49a      EduComp               5086936077              p.4

**A & L CESSPOOL SERVICE CORP.**
d/b/a A & L RECYCLING
38-40 Review Avenue
Long Island City, NY 11101
Tel: 718-729-3018
Fax: 718-729-5799

**INVOICE**

371198

| BILL TO: | 56 WALKER LLC.<br>56 WALKER STREET<br>ATTN: LLOYD HART<br>NEW YORK, NY 10013<br>(508) 345-1725 | SHIP TO: | 56 WALKER LLC.<br>56 WALKER STREET<br>ATTN: LLOYD HART<br>NEW YORK, NY 10013<br>(508) 345-1725 |
|---|---|---|---|

Page 1

| CUST NO. | SALESMAN NO. | P. O. NUMBER | SHIPPING INSTRUCTIONS | COL | PPD | SHIP DATE | TERMS | INVOICE DATE |
|---|---|---|---|---|---|---|---|---|
| 56W10001 | CAM | | 56 WALKER ST | | | | NET 30 DAYS | 04/15/08 |

| QUANTITY ORDERED | QUANTITY SHIPPED | QUAN. BACK ORD. | ITEM NUMBER | DESCRIPTION | UNIT PRICE | DISC % | EXTENDED PRICE |
|---|---|---|---|---|---|---|---|
| | | | | JOB DONE: 4/8/08 | | | 250.00 |
| | | | | MEN WITH SPECIAL CAMERA | | | |
| | | | | VIEWING EQUIPMENT, VIEWED | | | |
| | | | | INTERIOR OF MAIN SEWER LINE | | | |
| | | | | FROM MAIN HOUSETRAP 27 FEET | | | |
| | | | | TO CITY STREET SEWER. PIPE IS | | | |
| | | | | IN GOOD CONDITION, NO | | | |
| | | | | PROBLEMS FOUND. | | | |
| | | | | NOTE: LEFT VIDEO CD'S WITH | | | |
| | | | | LLOYD HART. | | | |
| | | | | JOB AT: 56 WALKER ST., NYC | | | |
| | | | | JO.D,WAY | | | |

UPON RECEIVING THIS INVOICE, IF YOU
HAVE A PROBLEM WITH WORK PERFORMED,
NOTIFY A&L WITHIN 48HRS. OR JOB IS
COMPLETED. THANKING YOU IN ADVANCE,
ORIGINAL COPY

| SALE AMOUNT | 250.00 |
|---|---|
| 8.375% TAX | 20.94 |
| FREIGHT: | |
| INVOICE TOTAL | 270.94 |

FORM# 9405-INVOICE I   TRANS MICRO ELECTRONIC FORMS 800-745-2335

**A & L CESSPOOL SERVICE CORP.**
38-40 REVIEW AVENUE
LONG ISLAND CITY, NY 11101
**TEL: (718) 729-3018**
FAX: (718) 729-5799

April 15, 2008

56 Walker LLC.
56 Walker Street
New York, NY
Attn: Lloyd Hart

Dear Mr. Hart,

In regards to the Camera inspection done on 4/8/08 at 56 Walker Street,
NYC...Men viewed interior of 6" main sewer line from main house trap 27
feet out to city street sewer. Pipe is in good condition, no problems found.

Sincerely,

*Livio Forte*

Livio Forte

Catch Basins, Dry Wells & Sewers
Cleaned & Pumped

Cesspools & Sump Pump Pits
Pumped & Cleaned

Lines Water Jet-Rodded

# A & L SERVICE CORP.

38-40 REVIEW AVENUE
LONG ISLAND CITY, NY 11101
Tel: (718) 729-3018
FAX: (718) 729-5799

JOB _____

CHARGE TO _____

OFFICE
ADDRESS _____

OFFICE
TELEPHONE _____

JOB
TELEPHONE _____

SPOKE
WITH _____

SEE _____

TERMS _____

REMARKS _____

JOB CHECKED BY _____

**Exhibit 3**

**Allerton Water & Sewer Maine Inc.  Invoice and Report on Sewer Inspection**

Allerton Water & Sewer Mains Inc.
1332 Commerce Avenue
Bronx, NY 10461
Phone# (718)957-9590
Fax# (718)597-9594

**Invoice**

| Date | Invoice# |
|------|----------|
| 6/2/08 | 001 |

**Bill To**

56 Walker LLC.
56 Walker Street
NY NY

**JOB SITE**

56 Walker Street

| | P.O. No. |
|---|---|

| Description | Serviced | Amount |
|-------------|----------|--------|
| We ran the camera through the sewer and we did not find a problem with this sewer. But there was an old sewer connection for a bathroom this connection had to be removed. We Brock the wall to gate to the sewer and removed the old pipe with a new 6" Cast iron 7 feet long pipe. We restore the wall the whey it was before. | 5-18-08 | $6,800.00 |

| | | |
|---|---|---|
| | Subtotal | $6,800.00 |
| | Total | |
| | Payments/Credits | |
| | Balance | $6,800.00 |